IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICOLE KENNEY,

            Plaintiff,           2:14-cv-00879
                                        **ELECTRONICALLY FILED**

    v.

CITY OF PITTSBURGH, PITTSBURGH
POLICE BUREAU,
OFFICER W. DERRICKSON (#1433),
OFFICER R. WALTER (#3773), OFFICER
ERIKA JONES,
OFFICER JEFFREY J. ABRAHAM, and
BRANDI BOYD
            Defendants.

## MEMORANDUM ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DOC. NO. 18)

### I. Introduction

Nicole Kenney ("Plaintiff") has filed an Amended Complaint against the City of Pittsburgh (the "City"), the Pittsburgh Police Bureau (the "Police Bureau"), Officer William Derrickson, Officer R. Walter, Officer Erika Jones, Officer Jeffrey Abraham ("Defendant Officers"), and Brandi Boyd. Plaintiff alleges seven counts in total, charging the aforementioned Defendants with claims pursuant to 42 U.S.C. § 1983 for violation of the Fourth, Ninth, and Fourteenth Amendments for false arrest, malicious prosecution, civil conspiracy, and associated pendent state law claims. Count I alleges that Defendant Officers, in their official and individual capacities, intentionally harassed and falsely arrested Plaintiff in violation of her constitutional rights under the Fourth, Ninth, and Fourteenth Amendments, entitling Plaintiff to compensatory damages; Count II alleges that Defendant Officers, in their individual capacities, intentionally harassed, falsely charged, and falsely arrested Plaintiff, with willful and wanton disregard of

Plaintiff's constitutional rights, entitling Plaintiff to punitive damages; Count III alleges that it was the policy and practice of the City and Police Bureau to authorize officers to misuse the power of arrest to harass and retaliate against citizens, entitling Plaintiff to compensatory damages; Count IV alleges that all Defendants conspired to violate Plaintiff's civil rights, entitling her to compensatory damages; Counts V alleges that Defendant Officers and Boyd intentionally inflected emotional distress, entitling her to compensatory damages; Count IV alleges that Defendant Officers and Boyd maliciously prosecuted Plaintiff, entitling her to compensatory and punitive damages; and Count VII alleges that Defendant Boyd assaulted Plaintiff, entitling Plaintiff to compensatory and punitive damages. Doc. No. 17. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. § 1983.

Presently before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) filed on behalf of the City of Pittsburgh, the Police Bureau, Officer Erika Jones and Officer Jeffrey Abraham. Doc. No. 18. Said Defendants move this Court to dismiss Plaintiff's Amended Complaint in its entirety. Id. Plaintiff wholly opposes this Motion. Doc. No. 29. Defendants Boyd, Walter, and Derrickson have not filed an answer or otherwise pled. See Text Entry for Doc. No. 17 "answer due by 12/8/14."

For the following reasons, Defendants' Motion to Dismiss (Doc. No. 18) will be **DENIED**.

## II. Factual Background

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, at this stage, the Court accepts all of the factual allegations in the Amended Complaint as true and all reasonable inferences are drawn in Plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009). Taking the Plaintiff's factual allegations as true, solely for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff is an African-American female. Doc. No. 17, ¶ 6.

On July 4, 2014, at approximately 2:30 or 3:00 A.M., Officer Derrickson and Officer Walter arrived at Plaintiff's residence and began banging on the door. Id. at ¶ 15. Officer Abraham may also have been present. Id. Plaintiff answered the door as the Officers forced their way inside, informing Plaintiff that she was under arrest for assaulting and recklessly endangering Brandi Boyd ("Boyd"). Id. These Officers are constable officers who are retained by the City of Pittsburgh and the Pittsburgh Police Bureau. Id. at ¶ 9. The Officers identified themselves as Pittsburgh Police Officers, but neither possessed forms of identification representing their association with the Pittsburgh Police, nor were they dressed in the Pittsburgh Police uniform. Id. at ¶ 15.

After informing Plaintiff that she was under arrest, one of the Officers stood in the living room and inappropriately looked at Plaintiff's 13 year-old daughter. Id. at ¶ 16. Additionally, one of the Officers followed Plaintiff upstairs to watch as she fully undressed and then dressed herself so that she could be placed in custody. Id. Plaintiff and her father asked to see a warrant. Id. at ¶ 17. The Officers did not produce an arrest or search warrant upon entering Plaintiff's residence, and did not read Plaintiff her Miranda rights upon arresting her. Id. The Officer who handcuffed Plaintiff stated to her that, "I know you didn't do that stuff to Boyd, but we had to come." Id. Plaintiff was taken by the officers to Allegheny County Jail. Id. Officer Abraham was listed as the arresting officer. Id. at ¶ 18. Plaintiff was charged with aggravated assault and reckless endangerment. Id.

Plaintiff later learned that these charges stemmed from an incident, which occurred on June 17, 2012. Id. at ¶ 19. On that date, at approximately 2:00 A.M., Plaintiff was pepper sprayed by Boyd upon getting out of her car near the Red Onion bar on Webster Avenue in Pittsburgh. Id. Plaintiff did not assault or endanger Boyd during this encounter. Id.

Later that day or the next day, Plaintiff attempted to file a police report about the incident at both the Zone 1 and Zone 2 stations of the Pittsburgh Police Department. Id. at ¶ 20. Pittsburgh Police refused to allow her to do so as she did not know the name of her assailant. Id. However, Officer Jeffrey Abraham of the Pittsburgh Police, took a false police report from Boyd, which resulted in charges being filed against Plaintiff, as previously noted. Id. After Boyd failed to appear at the hearing, the charges against Plaintiff were dismissed and the proceedings were terminated in her favor. Id. at ¶ 21.

On or about August 25, 2012, Plaintiff had another altercation with Boyd. Id. at ¶ 22. Boyd had been stalking Plaintiff for several days near 222 West Burgess Street. Id. When Plaintiff was outside 222 West Burgess Street, Boyd arrived along with a woman named Lakrisha Falconer, at which point Boyd again sprayed Plaintiff with pepper spray. Id. Falconer subsequently punched Plaintiff and an altercation ensued between the individuals. Id. Plaintiff was treated at UPMC Mercy as a result of injuries incurred during the altercation. Id. at ¶ 23.

On August 26, 2012, Plaintiff attempted to file a police report with the Pittsburgh Police in order to initiate criminal charges against Boyd. Id. at ¶ 24. However, Officer McManus of the Pittsburgh Police informed Plaintiff that she was unable to do so because Boyd had already filed charges against Plaintiff. Id. Officer McManus also told Plaintiff that being maced or sprayed with pepper spray was not grounds for a criminal assault charge. Id.

Additionally, on August 31, 2012, Officer Erika Jones verbally harassed Plaintiff. Id. Officer Jones spotted Plaintiff in the City Courthouse and accused Plaintiff of harassing Boyd. Id.

On or about September 22, 2012, Officer Derrickson and Officer Walter again arrived at Plaintiff's residence. Id. at ¶ 25. At approximately 1:30 A.M., the Officers knocked on Plaintiff's door while yelling, "Boom boom bitch, you know what you did." Id. Plaintiff refused to open the door and instead called her parents. Id. Upon Plaintiff's parents arriving, the Officers left the Plaintiff's residence. Id.

Through counsel, Plaintiff learned that there was a warrant issued for her on a terroristic threats charge. Id. at ¶ 26. Plaintiff never harassed or threatened Boyd. Id. at ¶ 27. Plaintiff turned herself in on this charge on Monday, September 24, 2012. Id. The arresting officer was listed as Officer Erika Jones of the Pittsburgh Police Department. Id. Plaintiff's criminal charges in this instance were based upon a false criminal charge filed by Boyd, with the assistance of the Pittsburgh Police Bureau and Officer Jones. Id.

Plaintiff filed a complaint with the Pittsburgh Citizen Police Review Board on January 22, 2013. Id. at ¶ 29. The complaint described the incidents of July 4, 2012 and September 21, 2012, as well as other incidents of harassment by the Pittsburgh Police. Plaintiff also complained about the Police's failure to investigate false charges Boyd had filed against Plaintiff. Id. The complaint identified Officers Abraham, Jones, Derrickson, Walter, and non-party Scheidelmier as the offending officers. Id.

On February 14, 2013, Plaintiff appeared for the preliminary hearing for the terroristic threats charge. Id. at ¶ 28. No individuals form the district attorney's office or the Pittsburgh

Police appeared to testify. Id. Magisterial District Judge Robert Ravenstahl, Jr. dismissed the charged and the case was terminated in Plaintiff's favor. Id.

On February 22, 2013, the City of Pittsburgh Office of Municipal Investigations sent Plaintiff a letter regarding her complaints to the Police Bureau. Id. at ¶ 30. The letter stated that Officers Derrickson and Walter were not Pittsburgh Police Officers. Id.

Plaintiff has suffered substantial damages as a result of the above incidents and false arrest including: bail bond fees, loss of time from work, medical expenses, mental and emptional stress, anxiety, depression, and pain and suffering. Id. at ¶ 33.

### III. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 562 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts:

6

> (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 562 U.S. at 672).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to relief. *Twombly*, 550 U.S. at 563 n.8.

### IV. Discussion

Defendants assert that Plaintiff's claims must be dismissed because: (1) probable cause existed for Plaintiff's arrests; (2) there are no allegations of interference with the legal process;

(3) Plaintiff fails to establish a claim for intentional infliction of emotional distress (Count V); and (4) Plaintiff's factual averments do not support the remaining counts.

> I. *Plaintiff's Claims for False Arrest, Violation of Due Process (Counts I and II) and Malicious Prosecution (Count VI)*

Defendants first argue that Plaintiff's claims of false arrest (Counts I and II) and malicious prosecution (Count VI) must be dismissed because probable cause existed for her arrest. Defendants' arguments are premised on information that is not contained in Plaintiff's Amended Complaint (ex. summation of a June 18, 2012, telephone call between Defendant Abraham and Boyd re: Boyd's assertion she had been shot at by a woman named Nikki Kenney) and documents that have not been attached to Plaintiff's Amended Complaint. Extraneous information and documents will not be considered by the Court at this stage.[1] The Court is required, in the context of a motion to dismiss, to take Plaintiff's claims as true and to draw all inferences in her favor. Plaintiff alleges that:

- Plaintiff did not assault or endanger Boyd "in any way whatsoever." Doc. No. 17, ¶ 19;
- Officers were aware that she didn't assault Boyd (re. aggravated assault and reckless endangerment charges). Id. at ¶ 17;
- Plaintiff never made any terroristic threats to Boyd. Id. at ¶ 27;
- Criminal proceedings were initiated against Plaintiff; and
- These proceedings terminated in Plaintiff's favor. Id. at ¶¶ 21, 28.

These factual averments are sufficient to establish that Plaintiff did not commit crimes, at least one of the Officer Defendants was aware that she did not commit the actions alleged,

---

[1] At this stage, the Court declines to take judicial notice of police reports and other documents of public record, as requested by Defendants. Doc. No. 32, 1.

charges were instituted, she was prosecuted for unfounded charges, and charges were terminated in her favor. Therefore, Plaintiff has demonstrated that discovery may lead to further evidence, such that a fact-finder could determine that probable cause did not exist to arrest Plaintiff on either occasion or prosecute her for aggravated assault, reckless endangerment, or terroristic threats. Similarly, Plaintiff has advanced sufficient facts to support that Pittsburgh Police Officers stymied her ability to make a complaint about Boyd and inhibited her ability to receive due process of law as to the charges filed against her. As such, Plaintiff must be allowed to proceed to discovery on these claims. Defendants' Motion to Dismiss will be denied in this regard.

> II. *Plaintiff's Claim of Conspiracy to Violate Her Civil Rights (Count IV) and Intentional Infliction of Emotional Distress (Count V)*

Defendants contend that Count IV, conspiracy to violate civil rights, must be dismissed because Plaintiff has not alleged an illicit agreement between Defendants to violate her civil rights. Doc. No. 19, 9-11. As noted by Defendants, Plaintiff must establish "actual agreement" between Defendants. *Watson v. Secretary of Pennsylvania Dept. of Corrections*, 436 Fed.Appx. 131, 137 (3d Cir. 2011). Plaintiff has pled that:

- Defendant Officers accused Plaintiff of harassing Boyd;
- Defendant Officers assisted Defendant Boyd in filing false charges;
- Defendants agreed to have Plaintiff arrested and criminally charged because Defendant Boyd was an informant and/or agent for the Police Bureau;
- Defendant Officers never investigated any of the false charged filed by Defendant Boyd; and
- Plaintiff was prevented from filing charges against Defendant Boyd by Pittsburgh Police Officers.

9

Although sparse as to actual agreement, these averments are sufficient to establish that Defendants conspired to violate her civil rights through a pattern of harassment and false arrest. Further, a reasonable fact-finder could determine that Defendants' conspiracy to violate Plaintiff's civil rights was "extreme" and "outrageous," entitling Plaintiff to damages for intentional infliction of emotional distress. Therefore, Defendants' Motion to Dismiss will be denied in this regard.

> III.   Claims against the City of Pittsburgh and the Pittsburgh Police Bureau (Count III: Municipal Liability and Count IV: Conspiracy to Violate Civil Rights)

Plaintiff has alleged that the City and the Police Bureau are liable for Defendant Officers' violation of her civil rights. Doc. No. 17. Defendant moves this Court to dismiss all claims against the City and Police Bureau because: (1) Plaintiff has not established a constitutional violation by Defendant Officers and (2) Plaintiff has not established supervisory or municipal liability. Doc. No. 19. The Court has already determined that Plaintiff's claims as to a constitutional violation are sufficient at this stage. Therefore, the Court need only address Defendants' second argument.

The Court recognizes that the City and Police Bureau may not be held liable for the Defendant Officers' violation of Plaintiff's civil rights solely based on their employment of the Officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). Rather, Plaintiff must establish that the City or Police Bureau had a "policy," "custom," or "practice" that "inflicts the injury." Id. at 694. The municipal "policy," "custom," or "practice" must reflect "deliberate indifference" to the risk that a violation of a particular constitutional right will result. *Board of Commissioners of Bryan County, OK v. Bryan County, OK*, 520 U.S. 397, 411 (1997).

Here, the Court must take as true that:

- The City and Police Bureau's policy and practice was to authorize certain officers to cover-up and misuse the power to arrest, including authorizing and encouraging officers to obtain warrants and file criminal complaints without sufficient probable cause;
- The City and Police Bureau allowed officers to file false criminal complaints to harass and retaliate against citizens;
- Supervisors encouraged and tolerated such actions;
- The City did not adequately train, direct, supervise, or control Defendant Officers; and
- These policies and practices were the cause of the violation of Plaintiff's constitutional rights.

Doc. No. 17, ¶¶ 44-47. These facts are sufficient to survive a motion to dismiss. Defendants' arguments are more appropriate in the context of a motion for summary judgment and may be re-raised after discovery has been completed.

## V. Order

For the foregoing reasons, the following Order is entered:

AND NOW, this 19th day of December, 2014, IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss (Doc. No. 32) is **DENIED**.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties