IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICOLE KENNEY,

          Plaintiff,                        2:14-cv-00879

                                            **ELECTRONICALLY FILED**

     v.

CITY OF PITTSBURGH, PITTSBURGH
POLICE BUREAU,
OFFICER W. DERRICKSON (#1433),
OFFICER R. WALTER (#3773), OFFICER
ERIKA JONES,
OFFICER JEFFREY J. ABRAHAM, and
BRANDI BOYD
                  Defendants.


## Memorandum Opinion on Summary Judgment

### I.      Introduction

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff, Nicole

Kenney, filed a seven count Complaint (and thereafter an Amended Complaint) alleging

numerous constitutional violations and state law claims stemming from her alleged unlawful

arrest(s) in July and September of 2012. Doc. No. 17 (Amended Complaint). Kenney contends

that her constitutional rights under the Fourth (4th), Ninth (9th) and Fourteenth (14th) Amendment

were violated in the following particulars: (1) that Officers Abraham, Jones, and Constables

Derrickson and Walter,[1] individually, and on behalf of the City of Pittsburgh (City) and the

Pittsburgh Police Bureau,[2] falsely arrested and maliciously prosecuted her without probable

cause (Counts I, II and VI); (2) that the City had a policy, practice, or custom that amounted to

---

[1] Throughout the pleadings, the parties have referred to Constable Walter as "Walter," and "Watter," with the most recent summons being listed as Officer Ronald Walter (#3773). Doc. No. 25. The Court will use the name Constable Walter for purposes of this Opinion.
[2] A City Department, such as the Pittsburgh Police Bureau is not an appropriate Defendant in a civil rights lawsuit, particularly where, as here, the City itself is a party. *Briggs v. Moore*, 251 Fed. App'x 77, 79 (3d Cir. 2007).

deliberate indifference in allowing Constables to serve arrest warrants that were based upon false affidavits which failed to establish probable cause for her arrest, and that the City failed to train or supervise the Officers who unlawfully violated her rights (Count III); (3) that all Defendants (the City, the Officers/Constables, and Boyd (an informant for the police)) conspired against her because Boyd gave false statements, and the Officers then swore out false affidavits that did not constitute probable cause and that the City wrongfully charged Plaintiff without further investigation, even though her accuser (Boyd) had prior felony convictions (Count IV); (4) that Defendant Officers, Constables, and Boyd intentionally inflicted emotional distress on Plaintiff (Count V); and, (5) Defendant Boyd intentionally battered and assaulted her (Count VII).

The gravamen of Plaintiff's Amended Complaint centers upon two incidents, wherein Constables Derrickson, and Walter, who are not employed by the City in any capacity (but rather by Castle Shannon), allegedly improperly served warrants for her arrest based upon allegedly falsified affidavits of probable cause that were prepared by Officers Jones and Abraham. The alleged basis for the affidavits of probable cause were statements made by Defendant Boyd, with whom Plaintiff had a contentious relationship, for reasons not entirely clear. Plaintiff contends that the Officers, the Constables, the City, and Boyd conspired against her to charge her with crimes she did not commit all because Boyd was an informant for the City. Criminal charges were lodged against Plaintiff as a result of allegations that Plaintiff shot a gun at Boyd and other allegations which Plaintiff contends were false. Ultimately, all charges were dismissed.

Pending before this Court are the joint motions for summary judgment and supporting documentation filed on behalf of Defendants Erika Jones, Jeffrey Abraham, the City of Pittsburgh and the City of Pittsburgh Police Bureau (doc. no. 43), Plaintiff's response in opposition thereto (doc. no. 51), and Defendants' Reply (doc. no. 55).

After careful consideration, and for the reasons that follow, this Court finds that Plaintiff has failed to adduce evidence from which a finder of fact could reasonably determine: (1) that there was no probable cause for the arrest of Plaintiff by Defendants Abraham and Jones (thereby eliminating false arrest and malicious prosecution claims); (2) that the Defendants conspired against her to violate her civil rights; and, (3) that the customs, practices, and policies of the City amounted to deliberate indifference to her constitutional rights.  Additionally, Defendants are entitled to qualified immunity for their actions.   For these reasons, the Court finds that when judging the facts in the light most favorable to Plaintiff as the non-moving party, the facts fall short of the quantum of culpability required in order to maintain a civil rights action.

Therefore, summary judgment will be GRANTED as to all claims against the City, and Officers Abraham, and Jones.  The Court will decline to exercise jurisdiction over the remaining assault/battery and emotional distress claims against Boyd, and the Constables.

## II.     Summary Judgment Standards

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail*

*Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001)

(court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III.     Material Facts

The parties have amassed approximately 25 pages of Joint Concise Material Facts, many of which are in fact disputed and are not material.  The Court has gleaned the following factual background, which unless otherwise noted, is undisputed.

#### A.     Investigation of Events Leading up to July 4, 2012 Arrest

On June 18, 2012, Defendant Abraham was dispatched to 111 Grimes Avenue in the Hill District section of Pittsburgh, for a criminal mischief report by alleged victim Boyd.  Doc. No. 57 at ¶ 1.  According to the affidavit of Officer Abraham, Boyd stated that she was at the Red Onion Bar on 2176 Webster Avenue between the hours of 12:00 AM and 1:30 AM on June 17, 2012, when she got into a verbal argument with a male known as Curtis (Edmonds) that she had been dating.  During the argument, a female who was with Edmonds went into a Chrysler 300 and allegedly pulled out a black pistol from her purse and pointed it at Boyd and fired two shots.  The affidavit explains that Boyd claimed that she fled on foot and called 911 but then left the scene to handle a family emergency.  Plaintiff disputes that version of the events and instead claims that Boyd attacked her with mace and/or pepper spray, that she did not fire any shots (as no shell casings were found at the scene), and that Defendants have not produced any record of Boyd's alleged 911 call.  Defendants counter that no shell casings were found because the police did not look for shell casings, and Defendant Abraham received a verbal confirmation of shots fired and did not seek a paper copy of the alleged 911 call until after this lawsuit was filed.

According to Abraham's prepared Police Report, Boyd (who has not been served and who has not been deposed in this case) also allegedly stated that after the incident at the Red

Onion Bar, Edmonds sent Boyd threatening texts stating that he was going to brick her house. When Boyd returned to her residence on June 18, 2012 at 9:30 P.M., she allegedly witnessed the same Chrysler 300 stop in front of her home and she saw Curtis throw a brick through her window. Kenney denies any knowledge of the vandalism to Boyd's home, and the parties dispute where Kenney was during the vandalism incident. Boyd, who allegedly did not know Kenney's name, asked others and found out her name; meanwhile, Officer Abraham conducted his own investigation (through the County Quick Arrest system) and determined Kenney's address, and saw that Kenney had been arrested on another occasion following a complaint of Kenney waiving a gun at another female and her children. Plaintiff takes issue with the fact that Officer Abraham did not check Boyd's background as well, which would have revealed a criminal record (Boyd was convicted of numerous charges, but only one 2005 *crimen falsi* conviction). Doc. No. 57 at ¶ 38. It is important to note that Abraham had no prior relationship with, nor did he even know Boyd prior to June 18, 2012. Doc. No. 44-2. Officer Abraham was also not aware that Boyd was an informant[3] for the Pittsburgh police. Doc. No. 57 at ¶ 16.

On June 25, 2012, Boyd picked Kenney's picture out of a picture line-up, which was created by Detective Scafede. Defendant Abraham completed the paperwork for a warrant for Kenney, which Kenney alleges was deficient because he did not interview either Edmonds or Kenney, only Boyd. Plaintiff contends that she gave a statement to Officer King, which Officer Abraham failed to investigate, but Defendants counter that Plaintiff never produced any record of such a report, other than Plaintiff's own statement. Id. at ¶ 3-4.

---

[3] Plaintiff's only evidence that Boyd was an informant are hearsay statements from gang members and Boyd's alleged statement that she was arrested because she would NOT tell on someone. Id. at ¶ 16.

### B.    July 4, 2012 Arrest

Pursuant to the warrant obtained by Officer Abraham, on July 4, 2012, at approximately 2:00-2:30 A.M., Kenney was arrested by Constables Derrickson and Walter, who arrived at Plaintiff's residence in Brighton Heights, and began banging on the door.  Id. at ¶ 5; Doc. No. 17, Amended Complaint at ¶ 15.  Kenney was in her living room when the Constables started pounding on the door.  Kenney was not dressed and she grabbed a short robe to cover herself. Plaintiff answered the door and one of the Constables shoved his flashlight in and forced the door open.  Doc. No. 57, Plaintiff's Additional Facts at ¶ 51.  After informing Plaintiff that she was under arrest, Plaintiff contends that one of the Constables stood in the living room and inappropriately looked at Plaintiff's 13 year-old daughter.  Doc. No. 57 at ¶ 52; Doc. No. 17, Amended Complaint at ¶ 16.  Additionally, one of the Constables followed Plaintiff upstairs to watch as she fully undressed and then dressed herself so that she could be placed in custody.  Id. at ¶ 53.  Plaintiff and her father asked to see a warrant.  Doc. No. 17, Amended Complaint at ¶ 17.  The Constables allegedly did not produce an arrest or search warrant upon entering Plaintiff's residence, and did not read Plaintiff her Miranda rights upon arresting her.  Instead, Plaintiff claims that the Constables told her that she was being arrested because she had "shot a woman in the head." Doc. No. 57 at ¶54.   Id.  Plaintiff stated that one of the Constables stated to her on the way to the Allegheny Jail, "I know you didn't do that stuff to Boyd, but we had to come."  Id. at ¶ 55. Plaintiff was taken by the officers to Allegheny County Jail.  Id.  Officer Abraham was listed as the arresting officer.  Doc. No. 17, Amended Complaint at ¶ 18.  Plaintiff was charged with aggravated assault and reckless endangerment.  Id. at ¶ 19.  There is no dispute among the parties that Plaintiff had a harrowing experience on the day of her July 4, 2012 arrest.

Later that day or the next day, Plaintiff attempted to file a police report about the incident at both the Zone 1 and Zone 2 stations of the Pittsburgh Police Department. Id. at ¶ 20. Pittsburgh Police refused to allow her to do so as she did not know the name of her assailant. Id.

On August 1, 2012, at the preliminary hearing before Magistrate Cooper, he decided not to hear the case, and according to Officer Abraham, Boyd was upset with him because the charges were not re-filed against Kenney.

**C.      Second Altercation and Attempted Arrest**

On August 25, 2012, Plaintiff and Boyd allegedly had another altercation, wherein Boyd allegedly maced Plaintiff. Doc. No. 17, Amended Complaint at ¶ 22. On August 26, 2012, Plaintiff attempted to file a police report with the Pittsburgh Police in order to initiate criminal charges against Boyd. Id. at ¶ 24. However, Officer McManus of the Pittsburgh Police informed Plaintiff that she was unable to do so because Boyd had already filed charges against Plaintiff. Id. Officer McManus also told Plaintiff that being maced or sprayed with pepper spray was not grounds for a criminal assault charge. Id.

On September 11, 2012, Officer Jones prepared an investigative report after Jones spoke with Boyd, following a hearing at City Court involving Edmonds. Based upon the information Jones received from Boyd including subsequent to Plaintiff's arrest in July of 2012, she was driving in front of her house threatening her, and waiving a gun in front of her children, Jones requested another arrest warrant which was approved by the District Attorney's Office and the District Magistrate Judge. Doc. No. 57 at ¶ 18. Officer Jones was not present when the Constables attempted to arrest Kenney, nor did she request that the Constables serve the arrest warrant.

According to the allegations in Plaintiff's Complaint (but not referenced in the Joint Concise Material Facts), on September 22, 2012, Constables Derrickson and Walter again arrived at Plaintiff's residence.  Doc. No. 17, Amended Complaint at ¶ 25.  At approximately 1:30 A.M., the Constables knocked on Plaintiff's door while yelling, "Boom boom bitch, you know what you did."  Id.  Plaintiff refused to open the door and instead called her parents.  Id.  Upon Plaintiff's parents arriving, the Officers left the Plaintiff's residence.  Id.  Neither Officers Jones, nor Abraham were involved in the attempted arrest of Plaintiff.

Through counsel, Plaintiff learned that there was a warrant issued for her on a terroristic threats charge.  Id. at ¶ 26.  Plaintiff turned herself in on this charge on Monday, September 24, 2012, and she was not arrested on the Jones charges.  Rather, she appeared at arraignment and was incarcerated until she posted bail.  Doc. No. 57 at 18, 24, 33-42.  The arresting officer was listed as Officer Jones.

Defendant Jones testified that she and Boyd appeared for the originally scheduled preliminary hearing and after agreeing to a no-contact order, the preliminary hearing was continued.  On February 14, 2013, Plaintiff appeared for the preliminary hearing for the terroristic threats charge.  Doc. No. 17, Amended Complaint at ¶ 28.  No individuals from the district attorney's office or the Pittsburgh Police appeared to testify.  Id. Magisterial District Judge Robert Ravenstahl, Jr. dismissed the charged and the case was terminated in Plaintiff's favor.  Id.  Defendant Jones testified under oath that she did not appear at the preliminary hearing when the charges were withdrawn because Plaintiff complied with the no contact order.  Doc. No. 57 at ¶ 18.

### D.    City of Pittsburgh Police and Constables

There were no officers from the City of Pittsburgh present during either the arrest on July 4, 2012, or the attempted arrest on September 22, 2012, although Plaintiff contends that the Constables stated that they were Pittsburgh Police.  Doc. No. 57 at ¶ 7.  They were not, however, dressed with any Pittsburgh police uniform insignia.  There is no evidence that the arresting Constables were contractual employees of the City of Pittsburgh, nor were they employees of the City.  Instead, Constable Derrickson was elected by Castle Shannon Borough in November 2009, and Constable Walter was appointed a deputy constable in July of 2011.  Doc. No. 57 at ¶9. Plaintiff has no evidence that the City ever paid Constables to serve warrants.  Doc. No. 57  at ¶ 10.  Plaintiff found out that Derrickson and Walter were Constables when she filed a complaint with the Citizens Review Board.  Doc. No. 57 at ¶ 13.

### E.    Complaints filed by Plaintiff

Plaintiff filed a complaint with the Pittsburgh Citizen Police Review Board on January 22, 2013.  Doc. No. 17 at ¶ 29.  The complaint described the incidents of July 4, 2012 and September 21, 2012, as well as other incidents of harassment by the Pittsburgh Police.  Plaintiff also complained about the Police's failure to investigate false charges Boyd had filed against Plaintiff.  Id.  The complaint identified Officers Abraham, Jones, Derrickson, Walter, and non-party Scheidelmier as the offending officers.  Id.

Kenney filed a Complaint with the City's Office of Municipal Invesgations ("OMI"), and Detective Jeffries conducted an investigation (without interviewing Plaintiff).  Doc. No. 57 at ¶¶ 44-46.  On February 22, 2013, the City of Pittsburgh Office of Municipal Investigations (OMI) sent Plaintiff a letter regarding her complaints to the Police Bureau.  Id. at ¶ 30.  The letter stated

that Constables Derrickson and Walter were not Pittsburgh Police Officers and that her complaint was unfounded.  Doc. No. 57 at ¶ 44.

### F.    Unserved Defendants

Constable Derrickson has since resigned and has moved to Henderson, Nevada, and he was never served in this matter.  Constable Walter (also referenced as Watter) has a registered address of 321 Murray's Lane, Pittsburgh, PA  15234, but cannot be found to reside there.  He also was never served.  Doc. No. 57 at ¶ 60.  Defendant Boyd was likewise not served, and Plaintiff was afforded multiple opportunities to effectuate service and is apparently unable to do so.  See Text Order of 11/21/2014.

### G.    Deposition of Plaintiff

Importantly, during her deposition, Plaintiff admitted that she has no information or evidence to support a claim that Defendant Jones inaccurately reported information from Boyd or reported information she knew to be false.  Doc. No. 57 at ¶ 19.  Plaintiff further admitted under oath that she has no information or evidence that either Defendant Jones or Abraham knew Boyd personally, and that she was not aware of any ill will by these Defendants toward her.  Id. at ¶ 20.  Moreover, Plaintiff admitted that she was unaware of any policy of the Pittsburgh Police that encouraged officers to "cover up and misuse the power to arrest."  Id. at ¶ 21.  Critically, Plaintiff was unable to recall a single incident besides her own, where the Pittsburgh Police arrested someone without probable cause.  Id. at ¶ 22.  Instead, Plaintiff contends that the Pittsburgh Police "utterly failed to conduct any investigation of the allegations Boyd made which led to two criminal complaints and corresponding arrest warrants being filed and issued against Plaintiff Kenney."   Id. at ¶ 24.  Plaintiff also takes issue with the use of Constables to execute warrants, claiming that they are inadequately trained.  Plaintiff puts forth and cites other lawsuits

many of which do not involve the City (including one involving her brother), and none of which

parallel the matters at hand before this Court.

**IV.     Discussion**

Plaintiff has advanced her federal claims pursuant to 42 U.S.C. § 1983 ("Section 1983"),

which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress . . . .
> 42 U.S.C. § 1983.

"Section 1983 provides remedies for deprivations of rights established in the

Constitution or federal laws. It does not, by its own terms, create substantive rights."

*Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006), *citing Baker v. McCollan*,

443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to set forth a claim for

relief under Section 1983, Plaintiff must demonstrate that "the defendant, acting under

color of state law, deprived him or her of a right secured by the Constitution or the laws

of the United States." Id. at 423.  Plaintiff alleges that Defendants, acting under color of

state law, deprived her of her Constitutional rights under the Fourth, Ninth and

Fourteenth Amendments.

## A.     False Arrest and Malicious Prosecution – Fourth Amendment[4] - Counts I, II and VI

Defendants argue that because probable cause existed for the arrests of Plaintiff by Defendants Abraham and Jones, Plaintiff's false arrest and malicious prosecution claims necessarily must falter.  Plaintiff's Fourth Amendment Claims are premised on theories of false arrest and malicious prosecution.  A claim for false arrest covers damages for the time of detention until the issuance of process or arraignment, and not more.  *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998).   A malicious prosecution claim covers damages for confinement that is imposed pursuant to process up until the time of trial.  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

Defendants correctly emphasize that a common element to claims of false arrest and malicious prosecution is the absence of probable cause.  *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *Basile v. Twp. Of Smith*, 752 F.Supp.2d 643, 651, 658 (W.D. Pa. 2010).  A finding that probable cause will exist where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime."  *Swope v. City of Pittsburgh*, Doc. No. 2:14-cv-939 Report and Recommendation adopted by Order (W.D. Pa Fed. 5, 2015) *quoting Commonwealth v. Thompson*, 985 A.2d 928, 931 (2009).  A police officer may arrest an individual based upon a victim's complaint as long as there is no reason to believe that it is unreliable.  *Young v. City of Pittsburgh*, *et*

---

[4] To the extent that Plaintiff is alleging constitutional violations under the Due Process Clause of the Fourteenth Amendment, the Court recognizes that because Plaintiff's claims of wrongdoing implicate Fourth Amendment rights, they cannot be prosecuted as Fourteenth Amendment Claims.  Any claims which occurred "through and after trial" are subject to the Fourteenth Amendment while the Fourth Amendment is applicable up until that time. *Halsey v. Pfieffer*, 750 F.3d 273, 291 (3d Cir. 2014).

*al*, 11-cv-650, *aff'd* 13-2469 (3d Cir. Apr. 4, 2014); 562 Fed. Appx. 135, 140 (3d Cir. 2014).

"The absence of probable cause is an essential element of both false arrest and malicious prosecution claims, and such claims cannot proceed if probable cause existed – regardless of whether the arrests at issue were a wise or typical use of police resources." *Young*, 562 Fed. Appx. at 140. A finding of probable cause, "requires more than mere suspicion . . . [but] does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Id.* (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995)).

This Court, viewing the facts in the light most favorable to Plaintiff, finds that probable cause (more than mere suspicion but not proof of guilt beyond a reasonable doubt) existed as a matter of law because the facts could not reasonably support a contrary factual finding. *Merkle v. Upper Dublin School Dist*, 211 F.3d 782, 788-89 (3d Cir. 2000). Where, as here, an arrest is made pursuant to a warrant, the plaintiff challenging probable cause must demonstrate "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 2121 F.3d 781, 786-87 (3d Cir. 2000).

In order to set forth a claim for false arrest, Plaintiff must show that: (1) she has been arrested or restrained, (2) without adequate legal justification (probable cause). *Gilbert v. Feld*, 788 F.Supp. 854, 862 (E.D. Pa. 1992). An action for false arrest requires that the process used for the arrest be void on its face or that the issuing

tribunal be without jurisdiction. *Perry v. Redner's Market, Inc*., 2010 WL 2572651, *4
(E.D. Pa. June 21, 2010)(citations omitted).

In order to set forth a claim for malicious prosecution, Plaintiff must show that:
(1) Defendant initiated a criminal proceeding; (2) the proceeding ended in Plaintiff's
favor; (3) the proceeding was initiated without probable cause; (4) Defendant acted
maliciously for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff
suffered a seizure as a consequence of a legal proceeding. *Johnson v. Bignear*, 441 Fed.
Appx. 848, 851 (3d Cir. 2011).

Plaintiff has failed to present any evidence from which a fact finder could
reasonably believe that Officers Jones and Abraham had no probable cause to effectuate
an arrest of Plaintiff. Plaintiff has not set forth any evidence, other than her own
statements, that the accusations of Boyd were false. This fact, even if true, does not
come close to establishing that Officers Abraham and/or Jones knowingly, deliberately,
or with a reckless disregard for the truth, made false statements, in applying for two
separate warrants, on two separate occasions, based upon reasonably trustworthy
information provided by Boyd on two separate occasions that was corroborated through
the Officers own investigation. Likewise, Plaintiff has presented no facts from which a
jury could reasonably find that any alleged statements or omissions were material or
necessary to a finding of probable cause.

Plaintiff's primary accusation that she claims negates a finding of probable
cause is the fact that Boyd had a criminal history, which the Officers failed to
adequately research. However, taking Plaintiff's argument to its natural conclusion,
means that any time a person with their own criminal history reports a crime, that there

should be no finding of probable cause.  Here, the facts establish that Defendant

Abraham conducted a full investigation which included speaking with Boyd, observing

the condition of the window at her home, corroborating Boyd's statement that there was

a "shots fired" call on the prior evening, and having another officer create a photo array

to identify Plaintiff, which Boyd unequivocally did.  Defendant Jones also had probable

cause as she also interviewed Boyd, with whom she had no prior personal relationship.

Both warrants were approved by the District Attorney and the Magistrate Judge.  That

Officer Abraham did not go back to the Bar, a day later, to check for shell casings, does

nothing to negate a finding of probable cause.  Likewise, that the Officers did not

attempt to interview Plaintiff does not negate a finding of probable cause.  Regardless

of whether the arrests were a "typical or wise use of police power," Plaintiff does not

come close to establishing a lack of probable cause, at the time of the arrest, which is a

required element of Plaintiff's claims of false arrest and malicious prosecution.  *Young*,

562 Fed. Appx. at 140.  Therefore, summary judgment will be granted as to Counts I, II

and VI.

### B.    Municipal Liability - Policy, Practice or Custom - Count III

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978), the United

States Supreme Court held that although municipalities and other local governmental bodies are

"persons" within the meaning of section 1983, a municipality may not be held vicariously liable

under section 1983 solely because of the existence of an employer-employee relationship with a

tortfeasor.   Instead,

> in *Monell* and subsequent cases, we have required a plaintiff seeking to impose
> liability on a municipality under § 1983 to identify a municipal "policy" or
> "custom" that ***caused*** the plaintiff's injury. . . .   Locating a "policy" ensures that
> a municipality is held liable only for those deprivations resulting from the

decisions of its duly constituted legislative body or of those officials *whose acts may fairly be said to be those of the municipality*. *Monell, supra*, at 694, 98 S.Ct., at 2027. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. 436 U.S., at 690-691, 98 S.Ct., at 2035-2036 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142 (1970)).

\*   \*   \*

As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged*. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997).

In *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the Court resolved a dispute

amongst the Courts of Appeal and held that "the inadequacy of police training may serve as the

basis for § 1983 liability *only where the failure to train amounts to deliberate indifference* to the

rights of persons with whom the police come into contact." (emphasis added). The Court found

this rule most consistent with its admonition in *Monell* that a municipality can be liable under

§ 1983 only if its policies are the moving force behind the constitutional violation. "Only where

a municipality's failure to train its employees in a relevant respect evidences a 'deliberate

indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a

city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389.

The Court of Appeals for the Third Circuit explained in *Beck v. City of Pittsburgh,* 89

F.3d 966, 971-72 (3d Cir. 1996):

When a suit against a municipality is based on § 1983, the municipality can *only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing*

**body or informally adopted by custom**.  *Monell* . . . Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. . . .

The Court's holding and reasoning in *Monell* have created a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom. . . .  In *Andrews* [*v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990)], this court articulated the distinctions between these two sources of liability:

A government policy or custom can be established in two ways.  Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict.  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.
895 F.2d at 1480 (citations omitted);  *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990) (same).  Custom, on which the plaintiff relies in this case, may also be established by evidence of knowledge and acquiescence.  *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989), *cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989).

Moreover, a plaintiff must show not only an unlawful policy or custom of the municipality, he or she must also establish that such policy or custom was the proximate cause of the injuries sustained, by showing a plausible nexus or affirmative link between the alleged policy or custom and the injuries. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996).

In support of Plaintiff's claim for municipal liability, she claims that the City (through its Officers and the OMI) failed to properly investigate her cases, and that the City failed to adequately control or train the Constables in executing warrants.  Plaintiff has failed to show any policy, practice, or custom with regard to investigation of cases, nor has she shown that the City was aware of any alleged civil rights violations and that the City ignored them or was otherwise indifferent.

Plaintiff's belief that the City failed to train Constables and that they should be monitored when operating within the City is misplaced.  Plaintiff has provided no authority to support her

claim that the City has any legal authority to control the actions of law enforcement officers other than sworn members of the Pittsburgh Bureau of Police. As Defendants point out, and this Court agrees, numerous law enforcement agencies and officers act within the geographical limits of the City, including the State Police, FBI, DEA, and County Police. The City has no authority to control or supervise officers of these entities, particularly, where, as here, the task is the service of a warrant which is issued by the state court system. Furthermore, Plaintiff has not submitted any facts from which a fact finder could reasonably find that there is a need for such supervision of the Constables that has been overlooked in a deliberately indifferent manner. In other words, she has not established any pattern or practice of Constables violating rights of citizens within the City of Pittsburgh while serving warrants. To the extent that Plaintiff alleges that the City had knowledge of one prior lawsuit alleging impropriety in serving a warrant filed in 2005 against Constable Derrickson, while possibly supporting a finding of negligence, does not come close to supporting a claim of deliberate indifference. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)(A showing of "simple or even heightened negligence will not suffice."). Summary judgment will be granted with respect to Count III.

### C. Conspiracy – Count IV

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Gale v. Storti*, 608 F.Supp. 2d 629, 635 (E.D. Pa. 2009). Plaintiff must demonstrate facts from which a fact finder could reasonably believe that there was an agreement, understanding or "meeting of the minds" to violate Plaintiff's civil rights. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Plaintiff must

establish "actual agreement" between Defendants. *Watson v. Secretary of Pennsylvania Dept. of Corrections*, 436 Fed.Appx. 131, 137 (3d Cir. 2011).

While not attempting to judge the credibility of the witnesses, the record reveals that an investigation was completed (by two separate Officers) which led to the filing of charges by the district attorney, and a magistrate determined whether a warrant was to be issued. Plaintiff has failed to produce any evidence of a conspiracy. Plaintiff has admitted that neither Officer Abraham nor Jones knew Boyd prior to Plaintiff's arrests. Plaintiff has failed to set forth a scintilla of evidence that Defendants acted with any ill will towards Plaintiff, or that there was any meeting of the minds to violate her rights. Accordingly, summary judgment will be granted as to Count IV.[5]

### D. Qualified Immunity

The next question is whether Defendants are entitled to qualified immunity. In analyzing qualified immunity claims for a police officer's violation of a constitutional right, the Court must apply a two-step inquiry. *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007); *see also Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) receded by Pearson v. Callahan, 555 U.S. 223 (2009).

In *Scott*, the United States Supreme Court set forth the first question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.'" *Scott*, 127 S.Ct. at 1774 (quoting *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* After conducting the above analysis, this Court finds that

---

5 The Court notes that Plaintiff agrees that she has no evidence of conspiracy between Officers Abraham and Jones, and, that she "must reluctantly concede that evidence to support her civil conspiracy claim has not been able to be developed." Doc. No. 51 at 14.

Defendant Officers are entitled to qualified immunity for their alleged actions because Plaintiff has failed to set forth any facts showing that the Officers violated her rights. There is no evidence or case law establishing that an officer must perform a background check on a victim because prior criminal activity by a victim negates a finding of probable cause, or that a failure to speak with the suspect prior to an arrest, constitutes a violation of a constitutional right. Again, there exists probable cause for the arrests of Plaintiff. Officers Abraham and Jones are entitled to qualified immunity for their actions.

#### E.      State Law Claims – Counts V and VII

Having dismissed all federal claims, the Court sees no extraordinary reason that would compel the Court to exercise its discretion to adjudicate this matter when only state law claims remain, against unserved Defendants. *Greenwood Partners, L.P. v. Cimnet, Inc*. 2003 WL 22238981 (E.D. Pa. 2003). Judicial economy will not be undermined by this Court's refusal to exercise jurisdiction over the state law claims, and this case may be transferred pursuant to 42 Pa.C.S.A. § 5103(b), to a Pennsylvania court and the case will proceed from there. Further, comity considerations weigh in favor of transfer, as this case involves issues that are traditionally resolved by the state. Additionally, consideration of issues of convenience or fairness does not provide a reason for this Court to exercise supplemental jurisdiction. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 351 (1988); *Cindrich v. Fisher*, 2006 WL 898176 *2-3 (M.D. Pa. 2006)(aff'd 341 Fed. Appx. 780 (3d Cir. 2009))(federal claims were dismissed at summary judgment phase and the district court properly declined to exercise jurisdiction over remaining state law claims).

**V.      Conclusion**

For the reasons set forth hereinabove, this Court finds that summary judgment is appropriate on Counts I, II, III, IV and VI, and will GRANT Defendants' motion for summary judgment in its entirety (doc. no. 43).   The Court declines to exercise jurisdiction over the remaining state law claims (Counts V and VII), which may be transferred to state court.  An appropriate Order follows.

**SO ORDERED** this 16th day of June, 2015.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties